IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM E. WOODS-BATEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) Civ. No. 07-00119 HG LEK |
| | ) |
| STATE OF HAWAII; DEPARTMENT | ) |
| OF HEALTH of the State of | ) |
| Hawaii; CHIYOME FUKINO, in | ) |
| her official capacity as | ) |
| Director of the Hawaii State | ) |
| Department of Health; SUSAN | ) |
| JACKSON, in her official | ) |
| capacity as Deputy Director | ) |
| of the Office of the Deputy | ) |
| Director of Health of the | ) |
| Hawaii State Department of | ) |
| Health; and ALVIN T. ONAKA, | ) |
| in his official capacity as | ) |
| State Registrar and Chief of | ) |
| the Office of Health Status | ) |
| of the Hawaii State | ) |
| Department of Health, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff William E. Woods-Bateman sues pursuant to 42

U.S.C. § 1983 because his application for a license to solemnize

marriages was denied under the provisions of Hawaii Revised

Statutes ("HRS") § 572-12.  Plaintiff challenges the

constitutional validity of HRS § 572-12, asserting that the

statute and Defendants' application of the statute violate his

1

rights guaranteed by the First, Fifth, and Fourteenth Amendments of the United States Constitution.  Plaintiff seeks damages, and an order enjoining the enforcement of HRS § 572-12.  Defendants move for summary judgment on all claims in Plaintiff's Complaint. Plaintiff moves for partial summary judgment on the issue of liability.

Plaintiff's claims against the State of Hawaii; the Department of Health of the State of Hawaii; Chiyome Fukino, the Director of the Hawaii State Department of Health; and Susan Jackson, the Deputy Director of the Hawaii State Department of Health[1], are barred by the doctrine of sovereign immunity.

As to the claims for prospective injunctive relief against Alvin T. Onaka, the State Registrar and Chief of the Office of Health Status Monitoring[2], HRS § 572-12 does not violate the establishment clause, Plaintiff has no fundamental right to solemnize marriages, and HRS § 572-12 is rationally related to a legitimate government interest in ensuring the integrity of marriages.  The Court GRANTS Defendants' motion for summary judgment, and DENIES Plaintiff's motion for partial summary

---

[1]Susan Jackson, the Deputy Director of the Hawaii State Department of Health, was incorrectly sued as "Deputy Director of the Office of the Deputy Director of Health of the Hawaii State Department of Health."

[2]Alvin T. Onaka, the State Registrar and Chief of the Office of Health Status Monitoring, was incorrectly sued as "State Registrar and Chief of the Office of Health Status of the Hawaii State Department of Health."

judgment.

## PROCEDURAL HISTORY

On March 5, 2007, Plaintiff filed his complaint. (Doc. 1.)

On November 13, 2007, Plaintiff filed a Motion for Partial Summary Judgment on the Issues of Liability, (Doc. 19), and a separate concise statement of facts in support, (Doc. 20).

On November 14, 2007, Defendants filed a Motion for Summary Judgment, and a separate concise statement of facts in support. (Docs. 22 and 23.)

On November 28, 2007, Plaintiff filed an Opposition to Defendants' motion for summary judgment.  (Doc. 25.)

On February 21, 2008, Defendants filed an Opposition to Plaintiff's motion for partial summary judgment on the issues of liability.  (Doc. 31.)

On March 3, 2008, Plaintiff filed a Reply in support of Plaintiff's motion for partial summary judgment on the issue of liability.  (Doc. 32.)

On March 7, 2008, the Court entered an Order indicating the matter would be decided without hearing pursuant to Local Rule 7.2(d).  (Doc. 33.)

## FACTS

### I.   The Application For A License To Solemnize Marriages

Plaintiff challenges Defendants' decision to deny Plaintiff's application for a license to solemnize marriages.  On

3

March 4, 2005, Plaintiff applied for a license to solemnize marriages pursuant to Hawaii Revised Statutes ("HRS") § 572-12. Plaintiff submitted the Application for Commission to Perform Marriage ("Application") to the Office of Health Status Monitoring.

In filling out the Application, Plaintiff chose not to provide answers to questions 9 through 16.  Questions 9-13 ask for information about an applicant's membership in an organization, Church, or society, and questions 14-16 about status as a judicial officer of a court.  Plaintiff filled out answers to the personal identification questions, providing his name, addresses, telephone numbers, and place and date of birth, and to the questions regarding his history of performing marriages in Hawaii.  He indicated the answers to the remaining questions were deliberately left blank.  In the 4 March, 2005, letter attached to the Application, Plaintiff stated his reason for leaving the questions unanswered was because he did not believe "that as a citizen the state should have any religious test of individuals for granting any license, authority, benefit or responsibility."

On March 4, 2005, N. Shima of the State of Hawaii Department of Health sent a letter to Plaintiff instructing him that in order for a license to be issued, Plaintiff needed to complete the Application, and to submit a letter of recommendation from the head of his church or religious denomination in Hawaii

4

requesting that a license to perform marriages in Hawaii be granted to Plaintiff. (Compl., Exh. 2, Doc. 1.)  The letter stated that upon review of the completed Application and letter of recommendation, Plaintiff's authorization to perform marriages in Hawaii would be approved. (Id.)  Plaintiff did not complete the Application or provide any response.

In a letter dated March 21, 2005, Alvin T. Onaka, State Registrar and Chief of the Office of Health Status Monitoring of the State of Hawaii Department of Health ("State Registrar"), notified Plaintiff that the Application had been rejected, and referred Plaintiff to HRS § 572-12. (Compl., Exh. 3, Doc. 1.) On March 25, 2005, in a letter to State Registrar Onaka, Plaintiff requested a detailed explanation of the rejection of the Application. (Compl., Exh. 4, Doc. 1.)  In his responsive letter dated May 27, 2005, State Registrar Onaka again quoted the language of HRS § 572-12, and noted that Plaintiff had "failed to provide documentation with [the] application" that Plaintiff met the requirements specified in the statute. (Compl., Exh. 5, Doc. 1.)

On August 30, 2005, Plaintiff wrote to State Registrar Onaka requesting copies of the rules and regulations relating to HRS § 572-12. (Compl., Exh. 6, Doc. 1.)

On January 5, 2006, Plaintiff submitted a second Application.  Plaintiff again left the answers to questions 9-16 blank, overwriting the document with a statement, saying in part,

that Plaintiff "should not have to declare any religious affiliation . . . to be a person as all other Hawaii citizen to perform legal marriages."  (Compl., Exh. 7, Doc. 1.)

Plaintiff asserts that the Application was denied unlawfully as he should not be "compelled, by the Defendants, to be a 'minister, priest, or officer' of a 'religious denomination or society' in order to be issued a license" to solemnize marriages in Hawaii.  (Compl. at ¶ 72, Doc. 1.)

## II. Claims Set Forth In The Complaint

The Complaint sets out claims asserting HRS § 572-12 violates Plaintiff's civil rights guaranteed by the First, Fifth, and Fourteenth Amendments of the United States Constitution. Counts One through Six allege the following claims:

**COUNT ONE** - "FIRST AMENDMENT VIOLATION BY IMPOSING THE REQUIREMENT OF A RELIGIOUS ASSOCIATION AS A PRECONDITION TO STATE LICENSING;"

**COUNT TWO** - "FIRST AMENDMENT VIOLATION BY COMPELLING SPEECH;"

**COUNT THREE** - "FIFTH AMENDMENT VIOLATION OF DUE PROCESS DEPRIVATION OF LIBERTY AND PROPERTY;"

**COUNT FOUR** - "FOURTEENTH AMENDMENT VIOLATION OF EQUAL PROTECTION OF THE LAW BY LIMITING THE ISSUANCE OF LICENSES ONLY TO THOSE PERSONS HAVING A 'RELIGIOUS DENOMINATION OR SOCIETY;'"

**COUNT FIVE** - "FOURTEENTH AMENDMENT VIOLATION OF EQUAL PROTECTION OF THE LAW BY LIMITING THE ISSUANCE OF LICENSES ONLY TO THOSE PERSONS DECLARING THAT THEY HAVE A 'RELIGIOUS DENOMINATION OR SOCIETY;'" and,

**COUNT SIX** - "VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. 1983 DESCRIBED IN COUNTS I, II, III AND IV."  In the text of

Count VI, the Complaint alleges that Count V is also based on § 1983.

In **Counts VI through XIX**, the Complaint then sets out various claims for violation of the Constitution of the State of Hawaii.

The Complaint requests a preliminary and permanent injunction "prohibiting Defendants continued or future wrongful and illegal activities as alleged" in the Complaint, and damages.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party

must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.

The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing party rest on conclusory statements.  <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

**ANALYSIS**

**I.   FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE STATE OF HAWAII DEFENDANTS BARRED BY ELEVENTH AMENDMENT IMMUNITY**

Plaintiff sues the State of Hawaii; the Department of Health of the State of Hawaii; Chiyome Fukino, in her official capacity as Director of the Hawaii State Department of Health ("Director"); Susan Jackson, in her official capacity as Deputy Director of the Hawaii State Department of Health ("Deputy Director"); and Alvin T. Onaka, in his official capacity as State Registrar and Chief of the Office of Health Status Monitoring ("State Registrar").  Such claims are all claims against the State of Hawaii.

The doctrine of sovereign immunity applies when civil rights claims are brought against a State for damages.  The State of Hawaii has not waived its Eleventh Amendment immunity, and Congress did not abrogate the States' sovereign immunity when enacting 42 U.S.C. § 1983.  Plaintiff's claims against the State of Hawaii, the Department of Health, and against Chiyome Fukino, Susan Jackson, and Alvin T. Onaka in their official capacities under 42 U.S.C. § 1983 for violation of the First, Fifth, and

9

Fourteenth Amendments of the United States Constitution are
barred by Eleventh Amendment Immunity.

### A.    The Doctrine of Sovereign Immunity

The doctrine of sovereign immunity is set out in the
Eleventh Amendment of the United States Constitution:

> The Judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United
> States by Citizens of another State, or by Citizens or
> Subjects of any Foreign State.

U.S. Const. amend. XI.  The United States Supreme Court has held
that Eleventh Amendment immunity extends to suits against a State
or its agencies by citizens of that same State.  Hans v.
Louisiana, 134 U.S. 1 (1890).  Sovereign immunity generally bars
the federal courts from entertaining suits brought against a
state or its agencies absent a State's consent or Congressional
abrogation.  Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697,
704 (9th Cir. 1992); Wilbur v. Locke, 423 F.3d 1101, 1111 (9th
Cir. 2005), cert. denied __ U.S. __, 126 S. Ct. 1338 (2006).

Absent a waiver or abrogation of immunity, federal statutory
and constitutional claims for money damages are barred against
state officials sued in their official capacities.  See Dittman
v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999).

### B.    Hawaii Has Not Waived Sovereign Immunity

A State's consent to waive sovereign immunity must be
expressed unequivocally.  Pennhurst State School & Hosp. v.

Halderman, 465 U.S. 89, 99 (1984).  The State of Hawaii has not waived its sovereign immunity from suit in federal court for civil rights actions.  Here, the State of Hawaii Defendants have invoked the doctrine of sovereign immunity.

### C.   42 U.S.C. § 1983 Does Not Abrogate Sovereign Immunity

Congress has the power to abrogate the sovereign immunity of the States, pursuant to Section 5 of Amendment XIV of the United States Constitution: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." Congress must do so by enacting a statute which "explicitly and by clear language indicate[s] on its face an intent to sweep away the immunity of the States." Quern v. Jordon, 440 U.S. 332, 332 (1979); Kimel v. Florida Board of Regents, 528 U.S. 62, 73 (2000)(Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute).

As stated by the United States Supreme Court in Will v. Michigan Dep't of State Police, Congress did not abrogate the States' Eleventh Amendment immunity when enacting 42 U.S.C. § 1983:

> Section 1983 provides a federal forum to remedy many
> deprivations of civil liberties, but it does not
> provide a federal forum for litigants who seek a remedy
> against a State for alleged deprivations of civil
> liberties. . . .

Will v. Michigan Dep't of State Police, 491 U.S. 58, at 65-66 (1989).

The State of Hawaii is not a "person" for purposes of liability under § 1983.  <u>Will</u>, 491 U.S. at 71.  A state official acting in her official capacity, except where sued for prospective injunctive relief, is also not a "person" for purposes of liability under § 1983.  <u>Id.</u>; <u>Sherez v. State of Hawaii Department of Education</u>, 396 F.Supp.2d 1138, 1142-43 (D. Haw. 2005) (dismissing claims against the Department of Education and against state official in official capacity on Eleventh Amendment Immunity grounds).

The State of Hawaii has not waived sovereign immunity, and Congress, in passing 42 U.S.C. § 1983, did not abrogate the Eleventh Amendment immunity of state governments.  The Court lacks jurisdiction over all of Plaintiff's federal constitutional claims for damages against the State of Hawaii, the Department of Health, and the employees of the State of Hawaii named in their official capacities.  The claims are DISMISSED.

**D.   Plaintiff's Claims For Prospective Relief**

The Court does have jurisdiction to consider Plaintiff's claims under § 1983 for prospective injunctive relief against Director Fukino, Deputy Director Jackson, and State Registrar Onaka in their official capacities.  Under the doctrine established in <u>Ex parte Young</u>, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a suit "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal

12

law." <u>Wilbur</u>, 423 F.3d at 1111 (<u>quoting</u> <u>Agua Caliente Band of</u> <u>Cahuilla Indians v. Hardin</u>, 223 F.3d 1041, 1045 (9th Cir. 2000)). This is because "official-capacity actions for prospective relief are not treated as actions against the State." <u>Will</u>, 491 U.S. at 71 n.10.

In determining "whether the doctrine of <u>Ex Parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Md., Inc. v.</u> <u>Public Serv. Comm'n of Md., et al.</u>, 535 U.S. 635, 645 (2002); <u>ACS of Fairbanks, Inc. v. GCI Communication Corp.</u>, 321 F.3d 1215, 1216-17 (9th Cir. 2003).  A plaintiff may not seek a "retroactive award which requires the payment of funds from the state treasury."  <u>Foulks v. Ohio Dep't of Rehabilitation and</u> <u>Correction</u>, 713 F.2d 1229, 1232 (6th Cir. 1983) (<u>citing</u> <u>Edelman</u> <u>v. Jordan</u>, 415 U.S. 651 (1974)).

The Court looks to Plaintiff's Complaint to determine the type of relief sought.  In the Complaint, Plaintiff does not state any facts regarding Deputy Director Jackson and Director Fukino that show a "nexus between the violation of federal law and the individual accused of violating that law." <u>Pennington</u> <u>Seed, Inc. v. Produce Exchange No. 299</u>, 457 F.3d 1334, 1342 (C.A.Fed. 2006); <u>Frew v. Hawkins</u>, 540 U.S. 431, 437 (2004). "[This] requires more than simply a broad general obligation to

prevent a violation; it requires an actual violation of federal law by that individual." Id.

In naming Deputy Director Jackson as a Defendant in her official capacity, Plaintiff only states that she occupies the position of Deputy Director of the Department of Health of the State of Hawaii. (Compl. at ¶ 27, Doc. 1.) In naming Director Fukino in her official capacity, Plaintiff states that on July 10, 2006, Director Fukino sent a one page letter to Plaintiff "in which she claimed incomprehension as to the nature of Plaintiff's complaint." (Compl. at ¶ 66, Doc. 1.) The position that Deputy Director Jackson holds, and Director Fukino's letter, are evidence only of general oversight of the issuance of licenses to perform marriages. General oversight of State laws is insufficient to establish the required nexus between the State officials and the alleged violation of Plaintiff's civil rights through the enforcement of HRS § 572-12. To abrogate Eleventh Amendment immunity, a state official's connection to the enforcement of the statutes "must be fairly direct, a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).

The Court lacks jurisdiction over Plaintiff's claims against Chiyome Fukino, in her official capacity as Director of the Hawaii State Department of Health; and Susan Jackson, in her

14

official capacity as Deputy Director of the Hawaii State
Department of Health, and the claims against Director Fukino and
Deputy Director Jackson are DISMISSED.

## II. THE COURT LACKS JURISDICTION TO HEAR PLAINTIFF'S CLAIMS THAT HRS § 572-12 VIOLATES HIS RIGHTS SECURED BY THE CONSTITUTION OF THE STATE OF HAWAII

In Counts VII through XIX, the Plaintiff asserts claims that
Defendants' application of HRS § 572-12 violates his civil rights
under the Constitution of the State of Hawaii.

As noted above, the doctrine of sovereign immunity set out
in the Eleventh Amendment of the United States Constitution bars
Plaintiff's federal claims for damages in federal Court against
the State of Hawaii, the Department of Health, and the state
employees sued in their official capacities.

Under the doctrine established by the United States Supreme
Court in Ex parte Young, 209 U.S. 123 (1908), the Eleventh
Amendment does not bar a suit "for prospective declaratory and
injunctive relief against state officers, sued in their official
capacities, to enjoin an alleged ongoing violation of federal
law." Wilbur, 423 F.3d at 1111 (quoting Aqua Caliente Band of
Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000)).

Here, in Counts VII-XIX Plaintiff seeks declaratory and
injunctive relief from alleged violations of the law of the State
of Hawaii. (Compl. at 32, and ¶¶ 100-154, Doc. 1.) The United
States Supreme Court, in the case of Pennhurst State School &
Hosp., announced that the Ex parte Young doctrine allows

15

prospective relief against state officers only to vindicate rights under federal law.  Pennhurst State School & Hosp. V. Halderman, 465 U.S. 89, 104-05 (1984).  See also Spolie v. Montanna, 411 F.3d 1051, 1060 (9th Cir. 2005)(Eleventh Amendment barred state citizen's federal court claim that state statute violated his property rights under state constitution).  To the extent that Plaintiff seeks to vindicate his asserted rights under State of Hawaii rather than federal law, Pennhurst dictates that the claims be dismissed.  Id.

**III. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS BROUGHT PURSUANT TO § 1983 AGAINST THE HAWAII STATE REGISTRAR**

The remaining Defendant is Alvin T. Onaka, named in his official capacity as State Registrar and Chief of the Office of Health Status Monitoring ("State Registrar").  Plaintiff sues State Registrar Onaka for prospective injunctive relief. Plaintiff's claims, brought pursuant to § 1983, are that the State of Hawaii Department of Health's enforcement of HRS § 572-12 has resulted in the alleged deprivation of Plaintiff's civil rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution.

While Plaintiff requests an injunction against the enforcement of HRS § 572-12, he is actually challenging the constitutional validity of the statute.  Plaintiff argues that an applicant "should not have to declare any religious affiliation . . . to be a person as all other Hawaii citizen to perform legal

16

marriages." (Compl., Exh. 7, Doc. 1.) Hawaii Revised Statutes § 572-12 is constitutional, and enforcement of the statute is not in violation of Plaintiff's civil rights.

**A.   Liability Pursuant To § 1983 For Prospective Relief**

Plaintiff's prospective federal constitutional claims against Defendant State Registrar Onaka are brought pursuant to § 1983.  § 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress
> . . .

42 U.S.C. § 1983.

§ 1983 provides the means by which a plaintiff can assert claims against government officials, and does not create substantive rights. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004)("Section 1983 does not create any substantive rights; rather it is a vehicle whereby plaintiffs can challenge actions by governmental officials.").  To state a cause of action under § 1983, a "plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." Kirtley v. Rianey, 326 F.3d 1088, 1092 (9th Cir. 2003); Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1988).

**B.   HRS § 572-12 Does Not Violate The Constitution Of The**

### United States

In the Complaint, Plaintiff challenges the constitutionality of HRS § 572-12, alleging that the State of Hawaii unlawfully imposes a religious test.  Plaintiff takes issue with the fact that a person who is not licensed as a court official must declare a religious affiliation in order to receive a license to conduct marriages.  (Compl. at ¶¶ 77-81 and Exh. 7, Doc. 1.)

HRS § 572-12 states the following requirements for being licensed to perform marriages:

§ 572-12. By whom solemnized

A license to solemnize marriages may be issued to, and the marriage rite may be performed and solemnized by any minister, priest, or officer of any religious denomination or society who has been ordained or is authorized to solemnize marriages according to the usages of such denomination or society, or any religious society not having clergy but providing solemnization in accordance with the rules and customs of that society, or any justice or judge or magistrate, active or retired, of a state or federal court in the State, upon presentation to such person or society of a license to marry, as prescribed by this chapter. Such person or society may receive the price stipulated by the parties or the gratification tendered.

HRS § 572-12.[3]

Legislative enactments are presumptively constitutional.

---

[3]Hawaii Revised Statutes § 572-6 states that it is the duty of every person legally authorized to grant licenses to marry, to immediately report the issuance of every marriage license to the agent of the Department of Health in the district in which the license is issued.  The report must set forth all facts required to be stated in such manner and on such form as the department may prescribe.  Every person authorized to solemnize marriages shall make and preserve a record of every marriage, and shall report every marriage ceremony within three business days.  HRS § 572-13.

<u>Davies Warehouse Co. v. Bowles</u>, 321 U.S. 144, 153 (1944)(State statutes, like federal ones, are entitled to the presumption of constitutionality until their invalidity is judicially declared); <u>Ogden v. Saunders</u>, 25 U.S. 213, 270 (1827)("It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favour of its validity, until its violation of the constitution is proved beyond all reasonable doubt.").  In asserting the claims that HRS § 572-12 violates the federal Constitution, Plaintiff bears the burden of showing that the statute is unconstitutional.  <u>Id.</u>

> **1.    HRS § 572-12 Is A Reasonable Regulation That May Be Imposed By The State Of Hawaii**

Plaintiff challenges the statutory provision requiring proof of membership in a religious denomination or society.  Plaintiff asserts that an applicant should be able to apply as an isolated individual, and need not be a member of any organization or a judicial officer of a court.  (Compl. at ¶¶ 77-81 and Exh. 7, Doc. 1.)

The right to marry is a fundamental right protected by the Equal Protection clause of the Fourteenth Amendment.  <u>Zablocki v. Redhail</u>, 434 U.S. 374 (1978).  The right to set the prerequisites for securing the legal status of marriage, however, is a sovereign function of the states.  <u>Sosna v. Iowa</u>, 419 U.S. 393, 404 (1975) ("'(t)he State . . . has absolute right to prescribe

the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved,'. . .”), quoting from Pennoyer v. Neff, 95 U.S. 714, 734-35 (1878); Loving v. Virginia, 388 U.S. 1, 7 (1967); Maynard v. Hill, 125 U.S. 190 (1888).

Reasonable regulations on the solemnization of marriages may be imposed by the State.  Zablocki v. Redhail, 434 U.S. 374, 386 (1978).  As the Supreme Court of the United States explained in the case of Zablocki, not every regulation is to be given rigorous scrutiny: “[b]y reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny.  To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed.”  Id.

The forms and procedures necessary to solemnize marriages are among the conditions that may be controlled by the State of Hawaii.  Salisbury v. List, 501 F.Supp. 105, 107 (D.Nev. 1980)(“The state legislatures may control the qualifications of the contracting parties, the forms or procedures necessary to solemnize the marriage, the duties and obligations it creates, its effect upon property rights, and the grounds for dissolution.”); O'Neill v. Dent, 364 F.Supp. 565, 568 n. 6 (E.D.N.Y.1973)(“[T]he power to regulate marriage is a sovereign

function retained by the States, and not vested in Congress.");
Maynard v. Hill, 125 U.S. 190 (1888)("Marriage, as creating the
most important relation in life, as having more to do with the
morals and civilization of a people than any other institution,
has always been subject to the control of the legislature.").

Here, HRS § 572-12 regulates who may perform marriages to
the limited extent of ensuring that licenses are issued to
persons with a vested interest in protecting the integrity of
marriages contracted to in Hawaii.  The State has an important
interest in the accuracy and completion of the information
necessary to maintain reliable records of marriage.  Many rights
and responsibilities flow from the marital status.  The
regulation provided by the statute supports the legitimate
interests of the State of Hawaii.  The statute is reasonable in
its choice of who is qualified to perform marriages: holders of
an office in a court, and those who belong to organizations with
an historically established interest in the institution of
marriage.

### 2.   HRS § 572-12 Does Not Violate The Establishment Clause

Plaintiff argues that HRS § 572-12 is subject to rigorous
scrutiny, rather than a rational basis test, because Plaintiff
construes the statute to impose a religious requirement, in
violation of the Establishment Clause of the First Amendment to
the United States Constitution.  (Compl. at ¶¶ 80-81, Doc. 1.)
Plaintiff misconstrues the effect of the Establishment Clause in

this context.

The Establishment Clause of the First Amendment secures against the establishment of religion by the Government, stating:

Congress shall make no law respecting an establishment of religion . . .

U.S. Const. amend. I.

The United States Supreme Court observed in the case of Lemon, that "the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'  Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971), quoting Walz v. Tax Commission, 397 U.S. 664, 668 (1970).

According to Lemon, a statute involving a religious component must have a secular legislative purpose to withstand an Establishment Clause challenge.  HRS § 572-12's primary purpose must neither advance nor inhibit religion, and the statute must not foster an excessive entanglement with religion.  Lemon, 403 U.S. at 612-13.

Here, applicants for a license to solemnize marriages in the State of Hawaii are required to write that they are either a holder of an office with a court, or a "minister, priest, or officer of any religious denomination or society . . ., or any religious society not having clergy but providing solemnization in accordance with the rules and customs of that society . . .."  Applicants are further required to provide documentation supporting the statements.  HRS § 572-12.

22

a.    HRS § 572-12 Has A Secular Legislative
      Purpose Of Securing The Integrity Of
      Marriages In Hawaii

As the Supreme Court of the United States noted in the case
of Maynard, the marriage relationship creates new legal rights
and obligations for the parties, and is a relationship in which
"the public is deeply interested, for it is the foundation of the
family and of society, without which there would be neither
civilization nor progress." Maynard v. Hill, 125 U.S. 190 (1888)

The legal status of marriage directly affects important
matters in a citizen's life.  Establishment of the status depends
on the accuracy of the information contained in the return of a
marriage certificate.  The recitation that the marriage was
actually entered into is a critical fact.  Accurate recordation
of the date of the marriage is also vital.  The date on which the
marriage was performed is determinative of such issues as
taxation categories, a surviving spouse's pension benefits, and
the definition of the marital property in a divorce proceeding.
The State is entitled to do what is reasonable to assure the
accuracy of the information reflected on the return of a marriage
certificate.

The statute imposes the condition that an applicant be a
member of an organization that has a vested interest in
solemnizing marriages, and in accurately providing information to
the Department of Health on the marriages performed.  The
requirement has the secular purpose of maintaining the integrity

23

of marriage records.  The statute ensures solemnization of
marriages by judicial officers or religious leaders who have
established procedures for providing accurate returns of marriage
certificates.  Judicial officers and religious leaders are
individuals that the State has recognized in the past and can
reasonably expect will ensure, in the future, the recording of
essential information.

       In providing for the licensing of individuals to perform
religious ceremonies, the State of Hawaii is accommodating the
deeply held beliefs of many of its citizens who prefer the
marriage be solemnized by a leader of their religion.  The
accommodation does not nullify the secular purpose and provides
religious freedom to be married according to one's religion.  In
addition, licensing ministers, priests, rabbis and other leaders
of religious denominations or societies furthers the secular
purpose of licensing individuals of integrity and responsibility
who have a vested interest in performing and reporting a marriage
in accordance with the laws of the State.  The United States
Supreme Court "has long recognized that the government may (and
sometimes must) accommodate religious practices and that it may
do so without violating the Establishment Clause." Corporation
of the Presiding Bishop of the Church of Latter-Day Saints v.
Amos, 483 U.S. 327, 334 (1987) (quoting Hobbie v. Unemployment
Appeals Comm'n of Fla., 480 U.S. 136 (1987).  HRS § 572-12
accommodates the free exercise of religion but does not provide

unlawful assistance to religious organizations in providing licenses to religious leaders.  In providing for religious as well as secular marriages, the statute does not convey a message of endorsement for religion over non-religion.

> **b.   HRS § 572-12 Does Not Advance Or Inhibit Religion**

The United States Supreme Court stated, in the case of Committee for Public Ed. & Religious Liberty v. Nyquist, that a proper respect for the Establishment Clause "compels the State to pursue a course of 'neutrality' toward religion." Committee for Public Ed. & Religious Liberty v. Nyquist, 413 U.S. 756, 792-793 (1973).  A course of neutrality favors neither one religion over another, nor religious adherents collectively over non-adherents. Board of Educ. of Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 687, 696 (1994).

HRS § 572-12 does not discriminate among religions or promote religion over non-religion.  Rather, as noted above, its provisions represent a congressional accommodation of sincerely held religious beliefs in a manner that is consistent with the overall secular purpose of protecting the integrity of marriages. The statute provides for civil, non-religious ceremonies performed by judges.  HRS § 572-12 also obliges those who wish to be married in a religious ceremony.

HRS § 572-12 does not a promote some religions over others. The statute's effect is to neither advance nor inhibit religion as shown by the provision that a leader of any "religious

25

denomination or society" qualifies for issuance of a license to perform marriages upon providing documentation of the applicants' membership and leadership position.  See Amos, 483 U.S. at 334 ("There is ample room under the Establishment Clause for 'benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference.')(quoting Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136 (1987).  Plaintiff's disqualification is rationally grounded in not having a leadership position in an organization with a vested interest in the integrity of marriages.  The disqualification does not raise a material issue of fact regarding a violation of the Establishment Clause.

### c.  Does Not Foster Excessive Governmental Entanglement With Religion

Nor does HRS § 572-12 foster an excessive entanglement with religion.  Here, requiring applicants for a license to perform marriages to be a leader of a religious denomination or society does not grant churches control over who may solemnize a marriage.  A church who documents an applicant's fitness to be licensed, comments only on the fitness of a particular applicant in accordance with the doctrine of its religious community.  The same church has no authority in the statute to block the provision of licenses to other applicants from other religious denominations or other societies.  Nor does any religious denomination have the statutory authority to prevent a judge from being licensed to perform marriages.  See HRS § 572-12.  Cf.

26

<u>Larkin v. Grendel's Den, Inc.</u>, 459 U.S. 116, 127
(1982)(Massachusetts statute, which vests in the governing bodies
of churches and schools the power effectively to veto
applications for liquor licenses within a 500-foot radius of the
church or school, violates the establishment clause of the First
Amendment).

HRS § 572-12 has a secular purpose, does not advance or
inhibit religion, and does not foster an excessive entanglement
with religion.  HRS § 572-12 does not violate the Establishment
Clause.

### 3.   HRS § 572-12 Does Not Violate The Free Speech Clause

In Count II of the Complaint, Plaintiff asserts that
requiring an applicant to answer questions regarding membership
in a religious organization violates the First Amendment right to
refrain from speaking.  (Compl. at ¶¶ 82-88, Doc. 1.)  Plaintiff
argues that enforcement of the statute unlawfully imposes a
requirement that an applicant "speak and identify an association
with a 'religious denomination or society.'"  (<u>Id.</u> at ¶ 86.)

The First Amendment's free speech clause states that
"Congress shall make no law ... abridging the freedom of speech."
U.S. Const. amend. I.  The free speech clause applies to the
states through the due process clause of the Fourteenth
Amendment.  <u>See</u>, <u>e.g.</u>, <u>Gitlow v. New York</u>, 268 U.S. 652, 666
(1925).

Plaintiff asserts that the statute compels speech in

27

requiring that an applicant state he is qualified to be issued a
marriage license by identifying his membership in a religious
denomination or society.  (Pl. Memo. at 17, Doc. 19.)

Plaintiff's claim of compelled speech is without merit.  The
constitutional harm prohibited by the First Amendment is the harm
of a private actor being forced to speak by the government in
support of a particular view, taking away the choice of remaining
silent.  See United States v. United Foods, Inc., 533 U.S. 405,
413-15 (2001); W. Va. State Bd. of Educ. v. Barnette, 319 U.S.
624, 642 (1943);  Wooley v. Maynard, 430 U.S. 705, 714-15 (1977)
("[T]he right of freedom of thought protected by the First
Amendment against state action includes both the right to speak
freely and the right to refrain from speaking at all."); Hurley
v. Irish-American Gay, Lesbian and Bisexual Group of Boston,
Inc., 515 U.S. 557, 573 (1995) ("[O]ne important manifestation of
the principle of free speech is that one who chooses to speak may
also decide 'what not to say'").

Here, HRS 572-12 requires an applicant to provide qualifying
information when applying for a license to solemnize marriages.
The statute does not force an applicant to speak publicly in
support of, or subsidize speech on, particular beliefs that an
applicant may or may not agree with.  Cf. Wooley, 430 U.S. at
714-15 (New Hampshire statute, which required display of state
motto on license plates, forcing plaintiffs to be instrument for
fostering public adherence to ideological point of view, invaded

sphere of intellect and spirit which First Amendment reserves
from all official control.).   The information request by the
State here is sought to ensure the secular purpose of the
statute, to safeguard the integrity of marriage.   It is not to
force support for a specific message intended to persuade others
to adopt a particular view.

Nor does the statute act as a prior restraint on Plaintiff's
speech.   Plaintiff claims that "the compulsory associations and
compulsory disclosures impinge upon the Plaintiff's right . . .
to speak . . ."  (Compl. at ¶ 75, Doc. 1.)

As the Supreme Court of the United States explains in
Southeastern Promotions, Ltd. v. Conrad, a law constitutes a
prior restraint when: (1) A person who seeks to exercise First
Amendment rights must apply to the government for permission; (2)
The government is empowered to determine-on the basis of the
content of the proposed expression-whether it should grant the
applicant permission to speak; (3) Permission to speak depends on
the government's affirmative action; and (4) Approval is not a
routine matter, but requires the government to examine facts,
exercise judgment, and form opinions.   Southeastern Promotions,
Ltd. v. Conrad, 420 U.S. 546, 554 (1975); see Freedman v.
Maryland, 380 U.S. 51 (1965); Bantam Books, Inc. v. Sullivan, 372
U.S. 58 (1963).   Most systems of prior restraint involve some
kind of licensing scheme or permit process.   See, e.g., Freedman,
380 U.S. at 58-59; Kunz v. New York, 340 U.S. 290 (1951).

Classic prior restraints give "public officials the power to deny use of a forum in advance of actual expression." <u>Southeastern Promotions, Ltd.</u> at 553.  None of the four elements exist here.

HRS § 572-12 does not concern the licensing of speech in a particular forum or at a particular time.  The statute regulates the issuance of licenses to perform marriages, not licenses to speak.  First, HRS 572-12 does not require citizens to apply for permission before they state their views regarding religious or secular beliefs.  The statute governs the issuance of licenses to conduct marriages, not licenses to permit speech.  Second, the statute does not authorize the State of Hawaii to examine the content of an applicant's proposed speech at the solemnization of a wedding before determining whether they will be issued a license.  Third, citizens do not have to await the State of Hawaii's approval before they speak at a marriage ceremony.  Finally, the statute does not require the State of Hawaii to examine the "pre-speech" facts, exercise its judgment, and decide whether to allow or prohibit the proposed speech at a wedding.

Summary judgment is warranted on the claim of violation of Plaintiff's First Amendment right not to be compelled to speak.

### 4.  Plaintiff's Equal Protection Claim Under The 14th Amendment

In Counts IV and V, Plaintiff challenges HRS § 572-12 as facially invalid, claiming it violates the Plaintiff's equal protection rights under the United States Constitution. Plaintiff asserts that because he has the fundamental individual

30

right to solemnize marriages, his civil right to equal protection
guaranteed by the Fourteenth Amendment has been violated by the
enforcement of HRS § 572-12.   (Pl. Memo. In Opp. at 5, Doc. 25)
("The fundamental rights are the rights to pursue a trade . . .")

The Equal Protection Clause of the Fourteenth Amendment
commands that no State shall "deny to any person within its
jurisdiction the equal protection of the laws." Plyler v. Doe,
457 U.S. 202, 216 (1982).  The Clause essentially directs that
"all persons similarly situated should be treated alike." City
of Cleburne, Tex. V. Cleburne Living Center, 473 U.S. 432, 439
(1985).

### a.    A Challenge To A Non-Fundamental Right Is Reviewed Under The Rational Basis Standard

There is no fundamental right to employment in a particular
job.  Massachusetts Board of Retirement v. Murgia, 427 U.S. 307,
313 (1976), see also, Commonwealth v. Henry's Dry Wall Co., Inc.,
320 N.E.2d at 914 ("[N]either the United States Supreme Court nor
this court has ever held that the right to work or to pursue
one's business is a fundamental right infringement of which
deserves strict judicial scrutiny.").  A challenge, under an
equal protection claim, to a statute affecting a non-fundamental
right is reviewed under the rational basis standard.  Id.  As the
United States Supreme Court explained in the case of
Massachusetts Board of Retirement, "We have expressly stated that
a standard less than strict scrutiny 'has consistently been
applied to state legislation restricting the availability of

employment opportunities.'"  Id.; Dandridge v. Williams, 397 U.S.
471, 485 (1970)(the reasonable basis standard "is a standard that
has consistently been applied to state legislation restricting
the availability of employment opportunities.").

Plaintiff asserts a distinction consisting of "one's
religion, or one's willingness to declare one's religion" as
constituting a suspect class for purposes of equal protection
analysis.  (Pl. Memo. at 24, Doc. 19.)  When the basis for a
distinction drawn by the statute is secular in a statute that
implicates religious activity, the rational basis standard is
applied.  Weinfield v. United States, 8 F.3d 1415, 1419 (9th Cir.
1993)(The Court "review[s] the statute to determine whether it
'clasif[ies] the persons it affects in a manner rationally
related to legitimate governmental objectives.'") (quoting
Schweiker v. Wilson, 450 U.S. 221, 230 (1981); Droz v. C.I.R., 48
F.3d 1120 (1995)(if basis for distinction is secular, then court
reviews statute to determine whether it classifies persons it
affects in manner rationally related to legitimate governmental
objectives).  HRS § 572-12 has the secular legislative purpose of
securing the integrity of marriages in the State of Hawaii.  The
statute is constitutional if the State has a rational basis for
the distinction drawn by its provisions.

A party challenging a statute on equal protection grounds
has a heavy burden.  Plaintiff must prove that the classification
is wholly arbitrary and irrational, see id., "and that it cannot

conceivably further a legitimate governmental interest."  <u>United States v. Phelps</u>, 17 F.3d 1334, 1345 (10th Cir.), <u>cert. denied</u>, 513 U.S. 844 (1994).  In <u>Federal Communications Commission v. Beach Communication, Inc.</u>, 508 U.S. 307 (1993), the United States Supreme Court explained the limitations on judicial review:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices . . . Where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end.'  This standard of review is a paradigm of judicial restraint.  The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.

<u>Id.</u> at 313-14 (citations omitted); <u>see id.</u> at 315 ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data").

Applying the rational basis standard, "we presume legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest."  <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 440 (1985)), <u>cert. denied</u>, 519 U.S. 1149 (1997).

**b.   The Provisions Of HRS § 572-12 Regulating The Issuance Of Licenses To Solemnize Marriages Serve A Legitimate State Interest**

Regulations regarding the solemnization of marriages serve a legitimate state interest.  In the case of <u>Boddie v. Connecticut</u>,

401 U.S. 371 (1971), the United States Supreme Court noted the
importance of the institution of marriage, stating that "[a]s
this Court on more than one occasion has recognized, marriage
involves interests of basic importance in our society."  The
integrity of marriages has been recognized as a matter of the
deepest public concern:

> In every enlightened government [marriage] is pre-
> eminently the basis of civil institutions, and thus an
> object of the deepest public concern.  In this light,
> marriage is more than a contract.  It is not a mere
> matter of pecuniary consideration.  It is a great
> public institution, giving character to our whole civil
> polity.

Noel v. Ewing, 9 Ind. 37, quoted with approval in Maynard v.
Hill, 125 U.S. 190, 213 (1888).  In Maynard, the United States
Supreme Court emphasized the interest of government in protecting
the legal integrity of marriages, saying:

> The relation once formed, the law steps in and holds
> the parties to various obligations and liabilities.  It
> is an institution, in the maintenance of which in its
> purity the public is deeply interested, for it is the
> foundation of the family and of society, without which
> there would be neither civilization nor progress.

Id. at 211.

> ### c.   There Is A Rational Basis For The Statutory
> Provisions Requiring Licenses Be Issued To
> Judges And Leaders Of Religious Denominations
> Or Societies

HRS § 572-12 requires an applicant be a member of an
organization that has a vested interest in solemnizing marriages,
and in accurately providing information to the State on the
marriages performed.

34

Defendants submit that the conditioning of the issuance of
the licenses on organizational membership ensures accurate
performance and reporting of marriages.  (Def. Motion at 25, Doc.
22.)  Judicial officers and religious leaders can reasonably be
expected to ensure the pre-requisites to marriage are met by the
marrying couple, and have established procedures for providing
accurate returns of marriage certificates.

This is a rational basis for limiting the issuance of
licenses to holders of offices of a court, and to leaders of
religious denominations or societies.  See Christy v. Hodel, 857
F.2d 1324, 1328 n.2 (9th Cir. 1988) ("In assessing whether
challenged legislation rationally furthers a legitimate
governmental goal, the court will consider not only the basis on
which the legislature actually acted, if ascertainable, but also
any hypothetical basis on which it might have acted . . . Since
the court itself may postulate a basis for the legislation,
satisfaction of the rationality test should be deemed a legal,
rather than a factual, issue.")(emphasis in the original).  As
the Appellate Court of Illinois explained in the case of People
v. Schuppert, 577 N.E.2d 828 (1991), that:

> There is a rational relationship which exists between
> the requirement that marriages of any sort be licensed
> and the strong continuing interest of the State in the
> institution of marriage, which adheres to the
> traditional doctrine that marriage is a civil contract
> between three parties, the husband, the wife, and the
> State itself.

Id. at 831.

HRS § 572-12 is rationally related to the State of Hawaii's interests.

### 5. The Due Process Clause Of The 5th Amendment Is Inapplicable Where There Is No Federal Defendant

In Count III, Plaintiff claims his right to due process of law afforded him by the Fifth Amendment of the United States Constitution was violated when he was denied a license to perform solemnize marriages in the State of Hawaii.  Plaintiff asserts "[t]his deprives [him] of both his liberty to engage in a trade and the property that he would have earned from the practice of that trade . . ."  (Compl. at ¶ 90, Doc. 1)

The Fifth Amendment due process clause incorporates the principles of equal justice under the law, applicable to the federal government, and prohibits the Federal Government from engaging in discrimination that is "so unjustifiable as to be violative of due process."  Boiling v. Sharpe, 347 U.S. 497, 499 (1954); Lyng v. Castillo, 477 U.S. 635, 636 n. 2 (1986).

There is no federal defendant in the case.  The Fifth Amendment's Due Process Clause does not apply to the States and is therefor inapplicable.  See Castillo v. McFadden, 399 F.3d 993, 1002 n. 5 (9th Cir. 2005)(noting that the Fifth Amendment's Due Process Clause prohibits the federal government from depriving persons of due process of law).

Summary judgment on Plaintiff's claims for violation of the due process clause of the Fifth Amendment to the United States Constitution is warranted.

36

**C.    Defendants Are Entitled To Summary Judgment On Plaintiff's Claim That HRS § 572-12, As Applied, Is Unconstitutional**

In Counts I-V, Plaintiff claims that Defendant, in applying the provisions of HRS § 572-12, violated his civil rights secured by the First, Fifth, and Fourteenth Amendments of the United States Constitution.  Plaintiff alleges that Defendant's application of the statute imposes unconstitutional speech requirements and a religious test because an applicant is compelled to declare that he is a leader of a religious organization, and to be a member of a religious organization. (Compl. at ¶¶ 77-88, Doc. 1.)

It is undisputed that in filling out the Application form, Plaintiff chose to leave the answers to questions 9-16 blank. The Department of Health rejected the application because it was blank, not because Plaintiff is non-religious.  The Department of Health was ensuring the conditions of the statute were being met when asking Plaintiff to prove his eligibility for a license. See Sosna v. Iowa, 419 U.S. 393, 404 (1975) ("'(t)he State . . . has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved,'. . ."), quoting from Pennoyer v. Neff, 95 U.S. 714, 734-35 (1878).  The Application was rejected because of enforcement of the documentation requirements of HRS § 572-12.  By failing to completely apply,

37

Plaintiff failed to pose the question of whether denial of his application was an unconstitutional application of HRS § 572-12 to him.

The requirement that documentation be provided is not *ultra vires* of the statute.  <u>See</u>, e.g., <u>In re Saunders (Hubbard)</u>, 37 N.Y.S.2d 341, 342 (Sup.Ct. 1942)(Petitioner's claim for registration as a minister authorized to perform marriages was properly rejected, where the only proof of being ordained by designated religious body was petitioner's own statement that he was a minister and bishop of his church, since a certificate issued by the governing body of the church petitioner claimed to represent was necessary to entitle petitioner to registration).

Evidence of the rejection of a blank application does not constitute a showing that Plaintiff was treated in a manner that was different than other applicants.  The evidence of the rejection does not show that Defendant imposed a religious test or speech requirement on Plaintiff alone when applying the provisions of the statute to him.  Plaintiff fails to raise an issue of material fact regarding any unconstitutional application of the statute.  Summary judgment on the claims regarding the unconstitutional application of HRS § 572-12 to Plaintiff is warranted.

## CONCLUSION

For the foregoing reasons,

1.    Defendants' Motion For Summary Judgment, (Doc. 22), is GRANTED.

2.    Plaintiff's Motion For Partial Summary Judgment on the Issues of Liability, (Doc. 19), is DENIED.

The case is now closed.

IT IS SO ORDERED.

DATED: May 13, 2008, Honolulu, Hawaii.



                          /s/ Helen Gillmor

                         Chief United States District Judge


WILLIAM E. WOODS-BATEMAN vs. STATE OF HAWAII; DEPARTMENT OF HEALTH of the State of Hawaii; CHIYOME FUKINO, in her official capacity as Director of the Hawaii State Department of Health; SUSAN JACKSON, in her official capacity as Deputy Director of the Office of the Deputy Director of Health of the Hawaii State Department of Health; and ALVIN T. ONAKA, in his official capacity as State Registrar and Chief of the Office of Health Status of the Hawaii State Department of Health, Civ. No. 07-00119 HG LEK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT and DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT